981 So.2d 1252 (2008)
William L. WILBUR, III, Appellant,
v.
Rosalie M. WILBUR, n/k/a Rosalie M. Martin, Appellee.
No. 2D07-2996.
District Court of Appeal of Florida, Second District.
May 16, 2008.
Douglas M. Buchwalter, Clearwater, for Appellant.
William A. Borja, Clearwater, for Appellee.
ALTENBERND, Judge.
William Wilbur appeals an order in a postdissolution proceeding that holds him in civil contempt for willful failure to pay support payments to his former wife, Rosalie M. Martin. We affirm the trial court's finding that Mr. Wilbur owed Ms. Martin $61,806.80 at the time the contempt order was entered and that he owned real estate with sufficient accessible equity to give him the ability to pay this amount as a purge. Under the circumstances presented, the undisputed fact that the real estate from which he might obtain an equity loan to satisfy his obligation is homestead does not protect Mr. Wilbur as a matter of law from this obligation. See Gepfrich v. Gepfrich, 582 So.2d 743 (Fla. 4th DCA 1991).[1] To the extent Mr. Wilbur *1253 expresses concern on appeal that he may be unable to procure such a loan despite his best efforts, we note that the order on appeal contains the language required by Family Law Rule of Procedure 12.615(e). If a writ of bodily attachment were to issue based upon Mr. Wilbur's failure to pay the purge, it would require a hearing within forty-eight hours at which evidence in this regard could be presented.[2]
Affirmed.
STRINGER and DAVIS, JJ., concur.
NOTES
[1] Notably, the current order does not place a lien on the property nor require a forced sale; it simply recognizes that the equity in the homestead, equity Mr. Wilbur has tapped into for other reasons, provides evidence of his ability to pay his support obligation to his former wife.
[2] There is no doubt that even in the absence of a home equity loan, Mr. Wilbur has some ability to make payments on his outstanding obligation. It may therefore behoove Mr. Wilbur to make good faith payments on the amount due while attempting to obtain the larger purge amountsomething Mr. Wilbur has resisted doing since 2003 when the obligation was declared nondischargeable.