980 So.2d 1210 (2008)
Elena RANDAZZO, Appellant,
v.
Marc RANDAZZO, Appellee.
No. 3D07-2049.
District Court of Appeal of Florida, Third District.
April 30, 2008.
Guy Spiegelman, Miami, for appellant.
Leinoff & Lemos and Andrew M. Leinoff, Coral Gables; Greene Smith & Associates and Cynthia L. Greene and Laura Davis Smith, Miami, for appellee.
Before RAMIREZ, CORTIÑAS, and ROTHENBERG, JJ.
CORTIÑAS, J.
Appellant, Elena Randazzo ("Former Wife"), seeks review of the trial court's order denying the Former Wife's exceptions to the report and recommendations of the general magistrate ("Exceptions Order") *1211 as well as the trial court's order denying the Wife's motion for rehearing.
During the course of their divorce proceedings, the Former Wife and appellee, Marc Randazzo ("Former Husband"), entered into a marital settlement agreement that was ultimately incorporated into a final judgment of dissolution of marriage by the trial court.
The settlement agreement provided, inter alia, that the Former Wife retained the marital residence and its contents and the Former Husband retained the 49% minority interest in a restaurant held by the parties and all debts and liabilities associated therewith. The settlement agreement also provided, in pertinent part:
The Wife shall pay the Husband the sum of one hundred and ninety thousand dollars ($190,000.00), within 90 days of the date of this Agreement, extended to 120 days for good cause. Same constitutes equitable distribution to the Husband.
The marital settlement agreement also provided that the Former Husband "shall execute a Quit Claim Deed transferring any interest he has in the residence upon execution of [the marital settlement agreement]." The Former Husband did so, and as set forth in the Exceptions Order, the trial court found that the Former Husband "[i]n good faith . . . signed the deed transferring his interest in the house to [the Former Wife] in anticipation of her selling the house and paying him $190,000."
However, when the 90-day deadline arrived, the Former Wife neither made payment nor requested an extension for good cause. After the issuance of the Final Judgment, the Former Husband filed a Motion to Compel, for Enforcement, Attorney's Fees, Costs and for Other Relief. The motion, which was based upon the Former Wife's failure to pay the $190,000 to the Former Husband, was heard before a general magistrate. The Former Wife represented to the magistrate that she had a contract for the sale of the marital residence and that the closing was scheduled for the following month. The magistrate orally announced her recommendation that the Former Husband's motion be granted and that an equitable lien be placed upon the marital residence. Shortly after the magistrate's oral pronouncement, and before the filing of the written Report and Recommendation of General Magistrate, the Former Wife filed for bankruptcy.
The magistrate's written report, in addition to reiterating the oral recommendations made at the hearing, also set forth the magistrate's finding of egregious conduct by the Former Wife. The report further provided:
However, [the equitable] lien will not be recorded until November 30, 2006, which is the date that the closing on the Former Wife's residence is scheduled, according to the Former Wife's representations. The Former Wife has represented that the Former Husband will be paid at the time of closing. If the closing is delayed, but the closing is still to take place, said equitable lien will not be recorded until the day of closing. However, in the event the closing does not materialize, or the transaction falls through, then the equitable lien may be recorded on the date that the transaction is no longer valid.
The Former Wife subsequently filed her exceptions to the magistrate's report and motion to vacate.
The bankruptcy filing stayed the proceedings in the dissolution case and during that time, the Former Wife sold the marital home and immediately purchased another home, upon which she claimed that a lien could not be placed due to her homestead rights. The bankruptcy court ultimately *1212 relinquished jurisdiction to the trial court for consideration and ruling on the Former Wife's exceptions and motion to vacate. Following a hearing, the trial court entered an order denying the exceptions, sustaining the magistrate's findings, and imposing an equitable lien in the amount of $190,000 upon the Former Wife's homestead property. A motion for rehearing filed by the Former Wife was also denied by the trial court. This appeal followed, seeking review of the order on the exceptions and motion to vacate, and the order denying the motion for rehearing.
The Florida Constitution provides that "no judgment, decree or execution shall be a lien" upon homestead property. See Art. X, § IV(a)(1), Fla. Const. However, this Court has previously held that "[h]omestead property may be subjected to equitable liens where fraud, reprehensible or egregious conduct is demonstrated. . . ." Sell v. Sell, 949 So.2d 1108, 1112 (Fla. 3d DCA 2007). Moreover, as we explained in Sell:
The Florida Supreme Court stated in Palm Beach Savings & Loan Ass'n v. Fishbein, 619 So.2d 267, 270 (Fla.1993), "that where equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of article X, section 4."
Id. at 1112.
The Former Wife argues that imposition of an equitable lien upon her newly-acquired homestead is precluded by Havoco of America, Ltd. v. Hill, 790 So.2d 1018 (Fla.2001). In Havoco, after protracted litigation involving "damages for fraud, conspiracy, tortuous [sic] interference with contractual relations, and breach of fiduciary duty," a jury awarded the plaintiff $15,000,000 in damages. Havoco, 790 So.2d. at 1019. After the court entered judgment in accordance with the jury verdict, but before the judgment became effective, the defendant paid $650,000 in cash for what he contended was his retirement home. Ultimately, the Florida Supreme Court, in Havoco, answered the following certified question:
Does Article X, Section 4 of the Florida Constitution exempt a Florida homestead, where the debtor acquired the homestead using non-exempt funds with the specific intent of hindering, delaying, or defrauding creditors in violation of Fla. Stat. § 726.105 or Fla. §§ 222.29 and 222.30?
In answering the certified question, and after analysis of numerous forfeiture and equitable lien cases, the Florida Supreme Court held:
In sum, we conclude that we must answer the certified question in the affirmative. The transfer of nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is not one of the three exceptions to the homestead exemption provided in article X, section 4. Nor can we reasonably extend our equitable lien jurisprudence to except such conduct from the exemption's protection. We have invoked equitable principles to reach beyond the literal language of the exceptions only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead.
Id. at 1028 (emphasis added).
In the case before us, the parties voluntarily entered into a marital settlement agreement which was then approved by the court and incorporated into the final judgment of dissolution. In disregard of the final judgment, the Former Wife failed to pay, or make any attempt to pay, the $190,000 equitable distribution to the Former *1213 Husband within the agreed upon time frame. Furthermore, the Former Wife failed to abide by the procedures set forth in the marital settlement agreement for obtaining an extension of time to pay the equitable distribution. As set forth in the magistrate's report, the Former Wife then represented that a sale on the marital residence was pending and that the Former Husband would be paid from the sale proceeds. After the wife filed for bankruptcy and stayed the dissolution proceedings, she sold the residence, and used the sale proceeds to purchase a new homestead property. In blatant disregard of her previous representations, no payment was made to the Former Husband.
With respect to a court's discretionary power, the Florida Supreme Court has held that:
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (quoting Delno v. Mkt. St. Ry. Co., 124 F.2d 965, 967 (9th Cir.1942)).
As such, we agree that the Former Wife's conduct was sufficient to warrant the imposition of an equitable lien and we find that the court did not abuse its discretion in denying the Former Wife's exceptions and motion to vacate nor in denying the Former Wife's motion for rehearing.
Affirmed.